553 So.2d 517 (1989)
Lewis (Louis) Reeves KELLY a/k/a "Bug" Kelly
v.
STATE of Mississippi.
No. 07-KA-58681.
Supreme Court of Mississippi.
November 22, 1989.
*518 George S. Shaddock, Pascagoula, for appellant.
Mike C. Moore, Atty. Gen., DeWitt Allred, Sp Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, PITTMAN and BLASS, JJ.
DAN M. LEE, Presiding Justice, for the Court:
On March 10, 1987, Lewis (Louis) Reeves Kelly, a/k/a "Bug" Kelly, was convicted of possession of a controlled substance with intent to distribute. He was sentenced to 20 years in the custody of the Mississippi Department of Corrections and fined $20,000.00. Aggrieved by his conviction and sentence, Kelly has perfected this appeal. After a thorough review of the record and arguments presented, we affirm.

A.
Kelly was the proprietor of a bar on Verlon Avenue in Moss Point, Mississippi, known as "Kelly's Bar." His activities at the bar had been the subject of a 14-month investigation by authorities. On the afternoon of August 15, 1986, through the combined efforts of approximately ten law enforcement officers from the Mississippi Bureau of Narcotics, Moss Point Police Department and Pascagoula Police Department, Kelly was served with a search warrant at his place of business. The warrant authorized the officers to search for rock cocaine, better known as "crack."
While being escorted to the room behind the bar, the 6'3", 327-pound Kelly reached into his groin area, removed a plastic bag, ran over his escort, entered the bathroom and flushed the bag down the toilet. Kelly was subdued by several officers, handcuffed and placed in the hallway while the search continued.
The toilet, after being hand-searched, was ripped from the floor, taken outside in front of the establishment and smashed to bits. The plastic bag was not found.
The City of Moss Point Water Department, Sewer Department and Fire Department were summoned to the scene. The water was turned off. After a determination that the Bar was connected to the main sewer system, the manhole cover 55 feet in front of the bar in the middle of Verlon Avenue was opened and secured by several officers. Five gallons of water was poured down the hole in the floor where the toilet had been and a plastic bag of off-white mush and rocks emerged from a drain pipe. It was later determined that the plastic bag contained cocaine.
A complete search of the premises yielded the following items: a matchbox containing eight (8) rocks of cocaine, two (2) mirrors, a bag of cotton swabs, an empty matchbox, three (3) spoons, a butane lighter, pieces of coat hangers, .357 magnum gun, a box of thin razor blades, loose razor *519 blades, scales, a bottle of Inositol, and three (3) boxes of Arm & Hammer baking soda. These items were taken into custody. Kelly and the manager of the bar, Jake Williams, were arrested and charged with possession of a controlled substance with intent to deliver.
An employee of Kelly's, Prosena Ariva Reddix, was also arrested. After giving a tape-recorded statement to the authorities, she was released without being charged.
Kelly and Williams were jointly indicted in October of 1986. Kelly filed a Motion for Discovery on October 13, 1986 and a Supplemental Request or Motion for Discovery on October 16, 1986. The State filed its Motion for Discovery on October 16, 1986. Both of these Motions were granted October 16, 1986.
Kelly was arraigned on December 15, 1986. He was granted a change of venue to Meridian, Lauderdale County, Mississippi, on February 9, 1987, and trial was set for March 9, 1987. Williams was granted a severance.
A hearing was held Tuesday, March 3, 1987 on Kelly's Motion to Suppress evidence recovered under the search warrant and Motion to Disclose Identity of Confidential Informant. Both motions were overruled. Additionally, both Kelly and the State were ordered to present a list of trial witnesses to the Court by the close of business on March 3, 1987, and to supplement those lists before Friday, March 6, 1987.
Kelly filed an additional Motion to Suppress and Motion in Limine on March 6, 1987, both of which were heard following the selection of the jury on March 9, 1987. The motions were overruled in part and sustained as to the following: any mention of marijuana, evidence of other crimes, and name calling.
Following the trial, conviction, and sentencing, Kelly filed a Motion for a New Trial. This Motion was overruled. Aggrieved with the outcome, he appeals and assigns four (4) errors.

B.
Assignments of Error I and III concern allegations of Rule 4.06 violations. For that reason, they are considered together.
ASSIGNMENT OF ERROR NO. I
The Trial Court Erred in Allowing into Evidence Certain Items which had not Previously been Disclosed to Counsel in Violation of a Discovery Order.
ASSIGNMENT OF ERROR NO. III
The Trial Court Erred in Allowing the Testimony of the witness Ariva Reddix Over Objection, Said Witnesses Name Not Having Been Previously Disclosed to Counsel in Violation of a Discovery Order.
These assignments raise this question: Is discovery, given by the State six (6) days prior to trial, sufficient notice to the defendant under Rule 4.06 of the Uniform Rules of Circuit Court Practice such that counsel may make beneficial use thereof? We hold that it is.
Rule 4.06 contemplates simultaneous discovery between the state and a defendant. The rule, in part, reads:
(a) The prosecution shall disclose to each defendant or to his attorney, and permit him to inspect, copy, test, and photograph upon request and without further order the following:
(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial;
(2) Copy of any recorded statement of the defendants to any law enforcement officer;
(3) Copy of the criminal record of the defendant, if proposed to be used to impeach;
(4) Copy of crime lab reports or report or any tests made;
(5) Exhibit any physical evidence and photos to be offered in evidence; and
(6) Copy of any exculpatory material concerning defendant.
* * * * * *

*520 (g) Upon a showing of cause, the court may at any time order that specified disclosures be restricted or deferred, or make such other order as is appropriate, provided that all material and information to which a party is entitled must be disclosed in time to permit his counsel to make beneficial use thereof.
This Court has held many times that discovery should occur prior to trial. Robinson v. State, 508 So.2d 1067 (Miss. 1987); Jones v. State, 481 So.2d 798 (Miss. 1985). We have consistently demonstrated our commitment to Rule 4.06. See Robinson v. State, 508 So.2d 1067 (Miss. 1987); Henry v. State, 484 So.2d 1012 (Miss. 1985); Barnes v. State, 471 So.2d 1218 (Miss. 1985); Harris v. State, 446 So.2d 585 (Miss. 1984); Ford v. State, 444 So.2d 841 (Miss. 1984); Box v. State, 437 So.2d 19 (Miss. 1983); Morris v. State, 436 So.2d 1381 (Miss. 1983). Unlike the challenges in the cases cited above, we are faced with the timeliness of disclosure prior to trial, not a failure to disclose prior to trial.
When this Court is faced with a claim of discovery violation, the record must be reviewed to determine whether the trial court followed the procedure set forth in Box v. State, 437 So.2d 19 (Miss. 1983) (Robertson, J., specially concurring). Accord Darby v. State, 538 So.2d 1168 (Miss. 1989); Cole v. State, 525 So.2d 365 (Miss. 1987); Henry v. State, 484 So.2d 1012 (Miss. 1986); Foster v. State 484 So.2d 1009 (Miss. 1986); Jones v. State, 481 So.2d 798 (Miss. 1985). See also Griffin v. State, 504 So.2d 186 (Miss. 1987); Watts v. State, 492 So.2d 1281 (Miss. 1986); Hall v. State, 490 So.2d 858 (Miss. 1986); Gray and Nations v. State, 487 So.2d 1304 (Miss. 1986); Cabello v. State, 471 So.2d 332 (Miss. 1985), cert denied, 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986).
The Box guidelines are clearly articulated in Cole v. State, 525 So.2d 365 (Miss. 1987):
1. Upon defense objection, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc.
2. If, after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue.
3. If the defendant does request a continuance the State may choose to proceed with trial and forego using the undisclosed evidence. If the State is not willing to proceed without the evidence, the trial court must grant the requested continuance.
Id. at 367-68 (citations omitted).
An order allowing discovery in the case sub judice was entered on October 16, 1986, pursuant to requests from Kelly and the State. The record shows that discovery was made by the State on September 24, 1986, October 31, 1986, November 21, 1986, January 12, 1987, January 19, 1987, January 22, 1987, and March 3, 1987. The trial began March 9, 1987, six (6) days after the last discovery was forthcoming from the State.
Applying the Box facts to the case sub judice it becomes clear that no discovery violation occurred.

1. Reasonable opportunity to become familiar with undisclosed evidence upon objection.

Kelly was given an opportunity to examine the physical evidence on March 2, 1987. He was given the name of the witness, Reddix, the following day and listened to the witness' tape recorded statement. Kelly objected to the physical evidence and the witness Reddix when he filed his Motion to Suppress on March 6, 1987. A suppression hearing was held on March 9, 1987. At that time, the trial court made a specific finding that Kelly had previously had an opportunity to view the evidence, had voiced no objection during the time set aside for objections, and the objections he raised immediately prior to trial were untimely. Additionally, during the trial the court specifically found that the *521 State had, in sufficient time, advised Kelly that she was going to testify.

2. Defendant must request a continuance to avoid waiver of the issue.

The record does not reflect that Kelly ever requested a continuance.
In accordance with the Box guidelines, our inquiry ends here. This Court "will not put the trial court in error for failing to grant relief which was never requested. By failing to request a continuance," Kelly "waived any violation of Rule 4.06." Cole at 368. These assignments of error are without merit and are rejected.
ASSIGNMENT OF ERROR NO. II.
The Trial Court Erred in Allowing, Over Objection, Certain Testimony Characterizing Certain Items as Those used by Drug Dealers in Making Rock Cocaine.
Kelly cites no authority in support of this assignment of error. It is the duty of an appellant to provide authority in support of an assignment of error. Brown v. State, 534 So.2d 1019, 1023 (Miss. 1988); Shive v. State, 507 So.2d 898 (Miss. 1987); Pate v. State, 419 So.2d 1324 (Miss. 1982). This Court has repeatedly said that we are under no obligation to consider assignments of error when no authority is cited. Brown v. State, 534 So.2d 1019, 1023 (Miss. 1988), citing Clark v. State, 503 So.2d 277 (Miss. 1987); Kelly v. State, 463 So.2d 1070 (Miss. 1985); Redmond v. State, 457 So.2d 1344 (Miss. 1984). Because of the novelty of the events surrounding this assignment, we nevertheless consider it.
David Jackson, a member of the Mississippi Bureau of Narcotics, served the search warrant on Kelly and supervised the search of Kelly's bar. As a result of the search, several items were recovered which, according to Officer Jackson, could have been used in the manufacture of crack cocaine; these items were introduced into evidence by way of Jackson's testimony. Even though Kelly was not caught in the act of manufacturing crack cocaine or using any of the items in evidence, Jackson nevertheless characterized those items for the jury, thus:
What you would do, a cocaine dealer would take the mirror and take the bottle of cocaine and put it on the mirror and cut it with the Inositol. He would take the razors and chop it up. The powdered cocaine a lot of times has a little bitty chunks in it. So what you do is you take the razor blade and you pour your cocaine out and chop it up. Then you take the Inositol and pour in with it and chop it up some more. Say you have one gram of cocaine that you had just purchased. You would take this Inositol and weigh out on the scales approximately another gram of Inositol, or whatever you think you can cut it with and still have a cocaine that you could sell. Say you bought an ounce, but I'm going to do it in grams. You have a gram of coke that you paid $100.00 for. You take that one gram and you mix a gram of Inositol with it. You have got two grams once you mix it together. So you have turned your $100.00 into a $200.00 profit. That's what you would do on the mirror with the razor blades. Then you would use the hanger and take spoons when you go to get your Inositol out, or take your spoon to dip your baking soda. You would take your powder cocaine, stick it in a jar, add a little baking soda to it, put a little water in, and take your coat hanger there with the cotton swab on it, dip it into a flammable substance such as rum  We always say rum because that's what a lot of people use. You can use rum, alcohol, listerine, mouthwash, or anything like that that's flammable. Then you would use that to heat it to get your cocaine to a rock form or crystal form. Then you would pour it back out on the mirror and cut it up into small pieces. Matchboxes are commonly used by cocaine dealers to store the rock cocaine in.
(Emphasis added)
Kelly was tried on a charge of possession of cocaine with intent to deliver, not manufacture. The cocaine Kelly was charged with intending to deliver was in the form of rocks. Although Jackson was not qualified as an expert, he was allowed to explain what rock cocaine is and how it is made at *522 the beginning of his testimony, prior to the explanation set out above, apparently in an effort to explain to the jury what rock cocaine is and to present a rational and coherent story to the jury. See Brown v. State, 483 So.2d 328, 330 (Miss. 1986); Turner v. State, 478 So.2d 300, 301 (Miss. 1985); Neal v. State, 451 So.2d 743, 759 (Miss. 1984).
The witness Reddix testified in the middle of the State's case. She testified, under a continuing objection, that she had personally witnessed Kelly manufacture the rock cocaine. Her testimony corroborated the method outlined by Jackson in his testimony.
We find no error in the initial explanation of rock cocaine that was offered by the State through the witness Jackson; such an explanation was helpful to the jury in understanding the charge. We find, and so hold, it was error to allow the testimony of Jackson, a non-expert, who characterized the use of the physical evidence in the manufacture of rock cocaine. However, after examination of the record as a whole, we find that such error was harmless beyond a reasonable doubt. United States v. Hasting, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980-81, 76 L.Ed.2d 96 (1983); Chapman v. California, 386 U.S. 18, 23-24, 87 S.Ct. 824, 827-28, 17 L.Ed.2d 705 (1967); Rule 61, Mississippi Rules of Civil Procedure.
ASSIGNMENT OF ERROR NO. IV.
That the Verdict of the Jury in this Case of Guilty as Charged is Against the Overwhelming Weight of the Credible Believable Evidence.
Kelly presented no evidence or testimony at his trial. His sole contention on this assignment is that the cross and re-cross examination of the witness Reddix contradicted the testimony of the other witnesses for the State.
It is not the function of this Court to pass on the credibility of any witness; that job is left solely to the province of the jury. See Campbell v. State, 480 So.2d 1161, 1162 (Miss. 1985); Smith v. State, 463 So.2d 1102 (Miss. 1985); Campbell v. State, 278 So.2d 420 (Miss. 1973). We have scrutinized the evidence in this case and find that the evidence amply supports the jury's verdict.
After reading the record and assignments with great care, we find no reversible error. Accordingly, we affirm the conviction and sentence of Kelly. Costs of appeal are assessed against the Appellant.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.